The next case on the calendar is Tull v. New York City Housing Authority. I remember once showing up in the appellate division, and my adversary did not show up to argue. And it turned out to be harder, not easier. I was concerned that that would be the case. Good morning, Your Honors. Rachel Wehner-Apter on behalf of Ms. Rosalinda Tull. This appeal arises from the dismissal of a pro se complaint. On any motion to dismiss any complaint, the court must construe the complaint liberally, accept all factual allegations as true, and that is all the more true for a pro se plaintiff who is alleging a violation of her civil rights. Here, the district court erred in dismissing Ms. Tull's pro se complaint for two reasons. First, Ms. Tull plausibly alleged that NYCHA refused to grant her a reasonable accommodation that was necessary to allow her, a disabled person, an equal opportunity to use and enjoy an apartment. Second, she plausibly alleged that after she told NYCHA that she would enforce her rights in federal court if necessary, NYCHA immediately retaliated against her by filing a frivolous eviction action. As to the reasonable accommodation claim, NYCHA does not contest four key points. First, that Ms. Tull is disabled. She suffered an ischemic stroke in 2013, which caused permanent vision impairment. Could you tell me what that means, ischemic stroke? I just don't know. An ischemic stroke, I believe, is where there is not enough blood that is going to the brain. And in Ms. Tull's case, it caused permanent vision impairment and also mobility problems. The mobility problems have improved over time. The vision impairment is permanent. She also suffers from severe asthma and allergies to dust and mold. NYCHA also doesn't contest that there's a serious problem with the heat in Ms. Tull's apartment. So the heat can reach over 98 degrees in the middle of the winter with the windows open, making it difficult for Ms. Tull to breathe. And her vulnerability to the heat is special, right, because of her asthma? Correct. Her asthma makes it uniquely difficult for her to breathe when the heat has reached these incredible proportions. NYCHA also agrees that in order to fix the problem with the heat, it must tear down the walls in her apartment, use foam to insulate the heating pipes, and then rebuild the walls. And Ms. Tull has repeatedly explained that because of her asthma, she can't live in the apartment while the walls are being torn down,  so she has also submitted letters from pulmonologists to support that. NYCHA had argued that Ms. Tull refused to permit repair workers into her apartment when it tried to make some efforts to fix some of these issues. And I think you argued that some of the evidence about that isn't properly considered on a motion to dismiss. But if we were to consider it, what would be the import of her refusals? We have a kind of fluid record here, given the history of litigation and the extensive nature of her complaint. I was troubled by the allegations about those refusals. Could you address that? So Ms. Tull has only refused the types of repairs that she would be unable to be present in the apartment for. So for example, when NYCHA has sent bricklayers and mason workers and repair people to break down the walls of her apartment, use foam to insulate the pipes and then rebuild the walls to the apartment, Ms. Tull has refused to allow those people to come into the apartment and do that while she continues to reside in the apartment because she has made clear that anything that would expose dust or mold would make the apartment uninhabitable for her because of her asthma, and she has submitted letters from pulmonologists that support that. Do I understand that there was one time when they did offer that, but it was a time in which she was physically incapable of moving to another apartment? You're correct, Judge Sack. There was one time right after Ms. Tull returned home from a five-day stay in the hospital when she was diagnosed with this ischemic stroke that NYCHA at that point offered a transfer to a studio apartment. However, Ms. Tull explained at the time that she had just suffered a serious stroke, that her right side was immobile, that she would be unable to pack or move. And NYCHA did not offer to wait until Ms. Tull had any time to regain any of her strength and mobility. And indeed, Ms. Tull made the same request for a reasonable accommodation on January 29, 2014, so about four to five weeks later, and NYCHA refused at that point. Could you address the retaliation claim, and in particular, assuming that there's protected activity? There is protected activity. There's a request for accommodation. How does the complaint make plausible that the eviction proceedings were commenced in retaliation? So Ms. Tull plausibly alleged, as you mentioned, that she engaged in protected activity when she informed the general counsel of NYCHA on October 29, 2015, that she would sue in federal court to enforce her rights if necessary. And then six days later, NYCHA retaliates against her by filing this eviction action. NYCHA argues that it has a legitimate non-discriminatory or non-retaliatory reason for filing the eviction actions that Ms. Tull owed unpaid rent. However, whether the evictions were retaliatory or not can't be resolved on a motion to dismiss because Ms. Tull alleges in her complaint that she did not owe any unpaid rent, and that factual allegation has to be accepted as true for purposes of a motion to dismiss. Aren't there allegations about repeated eviction proceedings brought at very— I'm trying to just make sense of how much weight we should read at the complaint stage to the fact that the eviction proceeding has begun six days after the complaint, given that there were multiple eviction proceedings. So there have been seven total eviction proceedings since 2010. Most of them occurred shortly after Ms. Tull had either requested a reasonable accommodation or, in this case, explained that she would resort to a suit in federal court if necessary. However, from all of those seven eviction proceedings, NYCHA has never received an order from any judge in the state of New York saying that Ms. Tull actually does owe unpaid rent. And most recently, in fact, this past May, a landlord-tenant court judge agreed with my client that she did not owe unpaid rent and dismissed NYCHA's eviction action as satisfied. And so I think that all of that is more than enough to have a plausible allegation that these actions were being used in retaliation for Ms. Tull's protected activity. In her complaint, Ms. Tull described numerous requests for accommodations, some of which didn't seem to relate to any of her disabilities. I gather she requested that her bathroom be given an additional entrance. But I understand from your briefing that you're really focusing on appeal on her asthma and the heat and her breathing incapacity because that affects work that would be done to remediate and so on. Is that right, that's what we should focus on? Yes, that's correct. As you noted, my client was not represented by an attorney before the district court, and so a lot of the material that she included in her complaint was barred by the statute of limitations as something that had happened in 2002 or 2003, 2004. On appeal, we are focusing on the fact that NYCHA refused to provide a temporary or permanent transfer to allow the necessary work to be done in Ms. Tull's apartment. But this has to do with asthma and not so much any mobility limitation that she had in the past? Correct. So in 2007, the mobility limitation led Ms. Tull to fall on a step in her bathroom twice right after she had knee surgery. However, that allegation would be barred by the statute of limitations at this point, and so we're not focusing on the problem with the step in 2007. And I understand, so you were appointed, right, to represent Ms. Tull? Correct. And we appreciate your- Thank you. Efforts on her behalf. But if we were to remand for further proceedings, would your representation of her cease, or what would we expect? So my representation of her would have to cease because I am starting a job with the Attorney General of New Jersey shortly, and I would not be able to represent Ms. Tull in that capacity. However, I am working my absolute hardest to try to find someone who would be able to represent Ms. Tull in the district court. And this court has also previously, in similar cases, noted in their opinion that perhaps a district court could consider appointing counsel under Section 1915 if appropriate in the district court, and I think that that would be appropriate in this case. My client actually, because of her serious vision impairment, that is what makes it very difficult for her to represent herself. And so in conclusion, I just wanted to say that Ms. Tull has tried everything in her power to get the accommodation that she needs to protect her health, and she hopes that this court will remand to the district court to allow her claims under the Rehabilitation Act and the ADA and the Fair Housing Act to proceed. Thank you very much for your help to the court today, and congratulations on the new job. Thank you. I guess since we have a new job, we don't have to order your firm to treat this all as billable time. I currently actually work at the ACLU, so that would be difficult for the ACLU as well. Thank you. Thank you.